# EXHIBIT A

FILED
06-10-2021
Clerk of Court
Douglas County, WI
2021CV000130

**STATE OF WISCONSIN**  **CIRCUIT COURT**  **COUNTY OF DOUGLAS**

Cheryl Shockley,  Case No. 2021-CV-_____

       Plaintiff,

v.

Integra Credit Two, LLC,
  d/b/a Integra, and
Clarity Services, Inc.,

       Defendants.

---

## SUMMONS

---

### THE STATE OF WISCONSIN
### TO EACH PERSON OR ENTITY NAMED ABOVE AS A DEFENDANT

You are hereby notified that the Plaintiff named above have filed a lawsuit or other legal action against you.  The complaint, which is attached, states the nature and basis of the legal action.

Within **twenty (20) days** of receiving this amended summons, you must respond with a written answer to the complaint, as the term is used in chapter 802 of the Wisconsin Statutes.  The court may reject or disregard an answer that does not follow the requirements of the statutes.  The answer must be electronically filed, or sent or delivered to the court, whose address is,

Clerk of Circuit Court,
Douglas  County Courthouse,
1313 Belknap Street
Superior, Wisconsin 54880,

and a copy sent or delivered to Plaintiff's attorney, whose address is

Eric L. Crandall, Esq.,
Crandall Law Firm, SC,
421 West Second Street,
PO Box 27,
New Richmond, WI 54017

-1-

You may have an attorney help or represent you.

If you do not provide a proper answer within twenty (20) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint.  A judgment may be enforced as provided by law.  A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

DATED: June 10, 2021

    Electronically signed by Eric Crandall

Eric L. Crandall, Esq.

**CRANDALL LAW FIRM, SC**

421 West Second Street

PO Box 27

New Richmond, WI 54017

715-243-9996 (p)

WisconsinConsumerLaw@frontier.com

Wis. Attorney Lic. No. 1001833

**ATTORNEY FOR PLAINTIFF**

FILED
06-10-2021
Clerk of Court
Douglas County, WI
2021CV000180

**STATE OF WISCONSIN**      **CIRCUIT COURT**      **COUNTY OF DOUGLAS**

Cheryl Shockley,                                         Case No. 2021-CV-_____

            Plaintiff,

v.

Integra Credit Two, LLC,
  d/b/a Integra, and
Clarity Services, Inc.,

            Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.      This is an action brought by Cheryl Shockley ("Shockley") seeking redress for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ( "FCRA"), committed by Integra Credit Two LLC, d/b/a Integra ("Integra"), and by Clarity Services, Inc.("Clarity"),  and for violations of Wisconsin's Privacy statute, Wis. Stat. § 995.50, committed by Integra. Shockley seeks recovery of actual, statutory and punitive damages, her reasonably incurred costs and attorney fees, as well as declaratory and injunctive relief.

### II. JURISDICTION

2.      Jurisdiction of this court arises under Wis. Stat. § 421.201-203 (WCA jurisdiction) and Wis. Stat. § 801.04 (general), as well as 15 U.S.C. §1681p (FCRA).

3.      Venue is appropriate under Wis. Stat. § 421.401 (WCA venue) and Wis. Stat. § 801.50 (venue).

## III.  PARTIES

**Cheryl Shockley**

4.    Plaintiff Cheryl Shockley is an individual residing in Douglas County, Wisconsin.

5.    While Shockley is of normal intelligence, she lacks advanced sophistication in the specific businesses of payday lending and credit reporting.

6.    Shockley was and is a  "consumer" or "customer" as defined by Wis. Stat. § 421.301(17).

7.    Shockley was and is a  "consumer"  as defined by 15 U.S.C. § 1681a( c ).

8.    Shockley was and is a  "person" as defined by Wis. Stat. § 990.01(26).

9.    Shockley was and is a  "person" as that term is used in Wis. Stat. § 995.50, and is further entitled to the protections and remedies of Wis. Stat. § 995.50.

**Integra**

10.    Defendant Integra, is a foreign company engaged in making consumer loans at high interest, and collecting and receiving payments from consumers on those loans.

11.    Integra is also engaged in arranging and brokering high interest consumer loans to other lenders.

12.    Integra regularly charges and receives payment from other lenders for arranging or brokering those loans.

13.    Integra is also engaged in selling leads for prospective high interest consumer loans to other lenders.

14.    Integra regularly charges and receives payment from other lenders, for selling leads for prospective high interest consumer loans to other lenders

15.    Integra is a sophisticated business, operating throughout Wisconsin.

16.    Integra is licensed to conduct business in Wisconsin.

17. Integra is licensed to make high interest loans to Wisconsin consumers.

18. Integra is a "merchant" as defined by Wis. Stat. § 421.301(25).

19. Integra is a "person" as defined by Wis. Stat. § 990.01.

20. Integra is also a "person" as that term is used in Wis. Stat. § 995.50, and is burdened by and subject to the remedies of Wis. Stat. § 995.50.

21. Per the "Terms of Use" section of its website, Integra acknowledges that it regularly arranges or obtains consumer loans for those who apply for credit.

22. Per the "Terms of Use" section of its website, Integra acknowledges that it regularly sells leads for prospective high interest consumer loans to other lenders.

23. Integra is liable for the acts of its employees, agents, and independent contractors under theories of respondeat superior, agency, and vicarious liability.

24. As a business conducting its affairs within the United States generally, and Wisconsin specifically, Integra is deemed to know what is lawful and what is unlawful under US and Wisconsin law. *Barlow v. United* States, 8 L. Ed. 728 (1833)("ignorance of the law will not excuse any person, either civilly or criminally"); *Atkins v. Parker,* 472 U.S. 115, 130 (1985)("all citizens are presumptively charged with knowledge of the law"); *Putnam v. Time Warner Cable of Southeastern Wisconsin, LP,* 2002 WI 108, ¶ 13 & footnote 4, 255 Wis.2d 447, 458 (Wis. 2002)("Wisconsin has adopted the mistake of law doctrine").

**Clarity**

25. Clarity is a corporation incorporated under the laws of the state of Delaware.

26. Clarity is a sophisticated business, operating throughout Wisconsin.

27. Clarity is a "person" as defined by Wis. Stat. § 990.01.

28.    Clarity is also a "person" as that term is used in Wis. Stat. § 995.50, and is burdened by and subject to the remedies of Wis. Stat. § 995.50.

29.    Clarity is a "consumer reporting agency" under the FCRA.

30.    Clarity maintains consumer reports on thousands of Wisconsin residents, and sells those reports to various third persons, including Integra.

31.    Clarity is a consumer reporting agency as defined by §1681a(f) of the Act, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers credit, to third parties.

32.    Clarity is a specialty nationwide consumer reporting agency as defined by §1681a (x) of the Act.

33.    Clarity is NOT a nationwide consumer reporting agency as defined by §1681a (p) of the Act.

34.    Clarity dispenses such consumer reports to third parties under contract for monetary compensation.

35.    Clarity is liable for the acts of its employees, agents, and independent contractors under theories of respondeat superior, agency, and vicarious liability.

36.    As a business conducting its affairs within the United States generally, and Wisconsin specifically, Clarity is deemed to know what is lawful and what is unlawful under US and Wisconsin law. *Barlow v. United* States, 8 L. Ed. 728 (1833)("ignorance of the law will not excuse any person, either civilly or criminally"); *Atkins v. Parker,* 472 U.S. 115, 130 (1985)("all citizens are presumptively charged with knowledge of the law"); *Putnam v. Time Warner Cable of Southeastern Wisconsin, LP,* 2002 WI 108, ¶ 13 & footnote 4, 255 Wis.2d 447, 458 (Wis. 2002)("Wisconsin has adopted the mistake of law doctrine").

## IV.  FACTUAL ALLEGATIONS

**INTRODUCTION TO LEAD GENERATION**

37.    The "lead generation market" ("market") is an adjunct to traditional sales and marketing programs.  It allows a company to profit from or monetize those sales leads it cannot or does not want to convert into customers, via several methods.

38.    It has found purchase in the high interest, consumer payday loan market.

39.    In one method, payday lenders arrange or broker a loan, finding other lenders that are willing to make a short term high interest loan to a consumer, with the brokering lender receiving compensation for brokering the loan.

40.    In another method, the payday lender simply sells the "lead" to other prospective lenders, also for compensation.

41.    Payday lenders typically - although not always - disclose this practice to prospective consumers in the "terms of service" or "terms of use"  sections of their websites.

42.    When a consumer seeks a loan from a payday lender, the consumer typically cannot proceed with the application unless they "check a box" on the lender's website that affirms the consumer agrees to the lenders "terms of use."

43.    These "terms of use" agreements often purport to bind the consumer to the lead generation practices of the payday lender.

44.    Typical lead generation practices include a consumer's purported grant of perpetual rights to the payday lender.  These perpetual grants often include perpetual arbitration clauses, perpetual rights to market or sell on the consumer's loan application to other payday lenders, and most astonishingly of all a perpetual right to access a consumer's credit report.

45.    However, many of these "terms of use" agreements are in artfully drawn.

46.  Oftentimes, payday lenders assume their "terms of use" agreements lawfully grant the lender the perpetual rights described above.

47.  In reality, many of these "terms of use" agreements deployed by American, foreign, and tribal payday lenders fall well short of the mark, and do not grant the perpetual rights the lenders think they have.

48.  Many of these "terms of use" agreements only grant the payday lender limited or no loan brokering rights.

49.  Many of these "terms of use" agreements only grant the payday lender limited or no credit report access rights.

50.  Many of these "terms of use" agreements only grant the payday lender limited or no right to sell on credit report access rights.

51.  On the otherwise of the equation, many of these "terms of use" agreements grant the payday lender rights that are so expansive that the grants become void for unconscionability.

52.  Many of these payday lenders improperly assume that the "terms of use" agreements deployed and adopted by other brokering or selling lenders are cogently and tightly drafted.

53.  Many of these payday lenders do not even review the "terms of use" agreements of the brokering or selling lenders before or after buying leads or buying credit report access rights.

54.  Many of these payday lenders do not consider their home state's common law or statutory law limits on unconscionable contract terms.

55.  Many of these payday lenders do not consider the common law or statutory law limits on unconscionable contract terms provided by the states where the consumers live.

56.     Accordingly, many of these "terms of use" agreements employed by lenders are subject to unconscionability challenges, which if successful leave the "terms of use" agreements void.

57.     Many of these payday lenders believe that the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and the Gramm Leach Bliley Act ("GLBA"), 15 U.S.C. § 6801 et. seq. do not allow a consumer to reject the sharing or sale if their PII or PFI, once the consumer e-signs the "terms of use" agreements.

58.     In reality, both the FCRA and the GLBA allow a consumer - even after he or she signs the "terms of use" agreement - to reject the sharing or sale of their PII and PFI.

59.     To make matters worse, most payday lenders do not save records of their transactions in the lead generation marketplace, so these lenders cannot know what rights they may or may not have had in relation to any particular consumer.

60.     To make matters even worse, many payday lenders do not maintain the licenses and registrations needed to broker these types of loans, to make these types of loans, or to sell on leads for these types of loans.

61.     Such unlicensed activity exposes the lender to a consumer's claim, to a court or arbitrator's ruling, or to a jury finding that the initial agreement between the consumer and the initial payday lender is void, thus rendering any and all later sales of the lead also void, thus rendering any and all later sales of the consumers PII and PFI void and thus unlawful,  and thus rendering any and all later credit report pulls unlawful.

62.     The Federal Trade Commission ("FTC") is one federal agency that polices this market.

63.    For example, LeapLab, LLC sold the PII and PFI of American consumers to third parties, who then used the information to unlawfully debit consumers's bank accounts.  The FTC brought an enforcement action which in essence put LeapLabs out of business.  *FTC v. SiteSearch Corporation, d/b/a LeapLabs*, No. 2:14-CV-02750 (D. Ax. Dec. 22, 2014).

64.    Other enforcement actions include *FTC v. Blue Global, LLC*, No. CV17-02117 (D. Az. July 24, 2017)(defendant enjoined from selling or sharing payday loan leads on any of its 38 websites, where it had previously sold the PII and PFI from 15 million loan applications receiving up to  $200.00 per loan application, to parties not in the payday loan business); *FTC v. Sequoia One, LLC*, No. 2:15-CV-01512 (D. Nev. Nov. 2, 2016)(defendant enjoined from selling or sharing payday loan leads).

65.    The Consumer Financial Protection Bureau ("CFPB") is another federal agency that polices this market.

66.    Enforcement actions brought by the CFPB include *In re Zero Parallel, LLC*, No. 2017-CFPB-0017( Sept. 6, 2017)(enjoining sale of consumer leads - containing PII and PFI of thousands of American consumers - in states that disallow payday lending or payday loan brokering and imposing $100,000.00 penalty).

67.    Against this backdrop, plaintiff asserts the claims at bar, seeking damages to be awarded by a jury and equitable relief to be ordered by the Court, as further described below.

**Claims of Cheryl Shockley**

68.    At all relevant times, Cheryl Shockley was in need of money to pay for her basic needs, including food, clothing, housing, home furnishings, utilities, and to pay existing debts.  Her income at all relevant times was limited, and she had few, if any, options for credit.

69. Given her lack of choice of lenders, Cheryl Shockley approached various short term, high interest lenders to arrange or obtain short term loans.

70. Cheryl Shockley also began obtaining copies of her consumer credit reports and files as maintained by both nationwide and speciality credit reporting agencies, and has retained the services of at least one credit monitoring service.

71. In a letter dated and mailed in March of 2021, Cheryl Shockley ordered and requested a copy of her consumer credit report from Clarity Services, Inc.

72. The letter ordering Cheryl Shockley's consumer credit report and file requested - to the fullest extent allowed or required by law - identification of the **sources of the information** in the report, including the true, correct and accurate legal name, true, correct and accurate trade name, the true, correct and accurate US mail, e-mail and website addresses, and true, correct and accurate phone number of all such persons and companies that furnished information to Clarity, and what information they furnished about Sarah Haas.

73. The letter ordering Cheryl Shockley's consumer credit report and file requested - to the fullest extent allowed or required by law - **identification of each and every person or company that accessed any information** contained in the report in the past year, requested identification of the true, correct and accurate legal name, the true correct and accurate trade name, the true correct and accurate US mail, e-mail and website addresses, requested identification of the true correct and accurate phone number of all such persons and companies, and requested identification of what information Clarity shared from Sarah Haas' consumer credit report and file.

74. The letter ordering Cheryl Shockley's consumer credit report and file requested disclosure of Sarah Haas' **credit score** as maintained by Clarity.

75.     The letter ordering Cheryl Shockley's consumer credit report and file was sent to the mailing
        address that Clarity designated as the address to send such a request, and was received on
        March 11, 2021.  Clarity designated that mailing address on its website as required by 12
        C.F.R. § 1022.137 (a)(1)(i - iii).

77.     On March 18, 2021, Clarity mailed a copy of Cheryl Shockley' consumer credit report and
        file to Cheryl Shockley.

78.     The information assembled by Clarity constitutes a "consumer report" under the FCRA, as
        the information is used for and bears "on a consumer's credit worthiness, credit standing,
        credit capacity, character, general reputation personal characteristics or mode of living ..."
        15 U.S.C. § 1681a(d)(1).

79.     The information assembled by Clarity constitutes a "consumer report" under the FCRA, as
        the information is assembled and is used "for the purpose of furnishing consumer reports to
        third parties ..."  15 U.S.C. § 1681a(d)(1).

80.     Clarity is a "consumer reporting agency" under the FCRA, as "for monetary fees" Clarity
        "regularly engages in ... the practice of assembling or evaluating consumer credit information
        or other information on consumers ..."  15 U.S.C. § 1681a(f).

81.     The information about Cheryl Shockley, held by and released by Clarity to Cheryl Shockley,
        constituted a "consumer report" under the FCRA. 15 U.S.C. § 1681a(d)(1).

82.     The information about Cheryl Shockley, requested by and obtained by various entities
        including Integra, constituted a "consumer report" under the FCRA. 15 U.S.C. § 1681a(d)(1).

83.     Clarity creates, generates and produces consumer credit reports and files on a regular basis,
        and derives the information in these reports from large amounts of information it collects and
        maintains on individuals like Cheryl Shockley in a data base called a consumer file.

84. For example, the consumer credit report produced by Clarity on March 18, 2021 and mailed to Shockley runs 50 pages, and is full of vast amounts of personal identifiable information ("PII") and personal financial information ("PFI"), including but not limited to her name, address, and social security number, as well as copious amount of her financial transaction history running over the course of many years.

85. When Cheryl Shockley obtained her Clarity consumer credit report, she learned that Integra had accessed her Clarity consumer credit report and file - either in full or in part - **16 times** between June 15, 2016 and August 3, 2020, in spite of the fact that she had never applied for a loan from Integra or authorised Integra to access her consumer credit report and file.

86. Each time Integra accessed Cheryl Shockley' Clarity consumer credit report and file, it obtained her personal identifiable information ("PII") and personal financial information ("PFI"), including but not limited to her name, address, and social security number, as well as her credit score and financial transaction history.

87. After receiving Cheryl Shockley' PII and PFI from Clarity, Integra forwarded Cheryl Shockley' PII and PFI to various high interest lenders.

88. When Integra forwarded Cheryl Shockley' PII and PFI to various high interest lenders, it did so in an effort to arrange or obtain a loan for Cheryl Shockley with these lenders and others, for which Integra was compensated.

89. When Integra forwarded Cheryl Shockley' PII and PFI to various high interest lenders, it did so to earn compensation for selling a lead, for which Integra was compensated.

90. Integra received compensation from these high interest lenders for forwarding Cheryl Shockley' PII and PFI.

91.    When Integra forwarded Cheryl Shockley' PII and PFI to various lenders, it received money solely for referring Cheryl Shockley to those lenders for the purpose of an extension of credit.

92.    Shockley' agent wrote Integra on June 1, 2021, requesting among other things that Integra provide information and documentation about its activities and accounts relating to Cheryl Shockley.

93.    Integra acknowledged receipt of the request, and responded that they had no records relating to Cheryl Shockley.

94.    Cheryl Shockley' consumer credit report, as well as information contained within it, was forwarded by Integra - for compensation - to unknown third parties.

95.    Cheryl Shockley's consumer credit report, as well as information contained within it, was forwarded by these unknown third parties to other parties.

96.    Clarity is also required by state and federal law including the FCRA to adopt and maintain procedures designed to both protect consumer credit information and to limit its obtainment as well as its dissemination to proper parties.

97.    Clarity has not adopted nor maintained procedures adequately designed to both protect consumer credit information and to limit its obtainment as well as its dissemination to proper parties.

98.    Clarity is prevented by state and federal law including the FCRA from releasing Cheryl Shockley' consumer credit report and file to third parties absent a permissible purpose under the FCRA, 15 U.S.C. § 1681b(a)(1 through 6).

99.     None of the circumstances listed in 15 U.S.C. § 1681b(a)(1 through 6) are present here, as, Cheryl Shockley gave no "written instructions" to Clarity to release her credit report, there is no "credit transaction" or "credit application" initiated by Cheryl Shockley, and no "business transaction" was initiated by Cheryl Shockley.

100.    The initiation of a "credit transaction" or "credit application" or "business transaction" by a third party is not a permissible purpose under the FCRA.

101.    Integra is required by the FCRA to adopt and maintain procedures designed to limit and restrict its access to consumer credit information, except where a permissible purpose to access the information exists. 15 U.S.C. § 1681b(f).

102.    Contrary to its duties under 15 U.S.C. § 1681b(f), Integra unlawfully retrieved a complete copy of Cheryl Shockley' consumer credit report and file as maintained by Clarity, and did so 8 times between July 2010 and December 2020.

103.    The referenced inquiries have become a permanent component of Cheryl Shockley' credit report and is reported to those who ask to review the credit history of Cheryl Shockley.

104.    Integra agreed and represented in its agreements with the various credit reporting agencies that Integra would request and use consumer reports which were obtained from said agencies only for purposes which are lawful under the FCRA as defined under §1681b.

105.    Integra is and was required by §§ 1681b, 1681n, and 1681q to refrain from obtaining consumer reports from credit reporting agencies under false pretenses, or without a legal basis.

106.    At no time material hereto did Cheryl Shockley ever have a relationship with Integra, or Clarity of the kind specified under §1681b(a)(3)(A) - (F).

107. Cheryl Shockley has never given written instructions to Integra or Clarity to obtain and/or release to Integra a consumer report of which Cheryl Shockley was the subject.

108. Neither Integra, nor Clarity have ever been ordered by a court of competent jurisdiction to obtain a copy of Cheryl Shockley' consumer credit report and file pursuant to § 1681b(1).

109. Integra and Clarity each have an affirmative duty to follow reasonable procedures, including those that would prevent the impermissible accessing of consumer reports.

110. Reasonable procedures for users include restricting the ability of Integra and its agents, affiliates and partners to obtain consumer reports on consumers for any impermissible purpose, and include verification by Clarity of any "written instruction" from Shockley purporting to direct Clarity to release her consumer credit report to Integra.

111. Clarity did not employ reasonable procedures as to Shockley's PII and PFI and the information in her consumer file, as Clarity released Shockley's PII, PFI and her consumer credit file to Integra - solely based on Integra's promise that it had a permissible purpose to obtain the information, and without viewing any "written instruction" from Shockley as is required by the FCRA for such a release of consumer data and consumer information.

112. Integra and Clarity's illegal, unlawful, and impermissible creation, dissemination, acquisition and / or redisclosure of Cheryl Shockley' consumer credit report and file violates Cheryl Shockley' privacy rights under the FCRA, and have have impaired Cheryl Shockley' future access to credit.

113. As a result of the acts alleged above, Cheryl Shockley has suffered and is entitled to recover damages and equitable relief.

## V.  CAUSES OF ACTION

**COUNT 1.  FAIR CREDIT REPORTING ACT**

114.   Cheryl Shockley incorporates by reference all the foregoing paragraphs.

115.   Integra  willfully and/or negligently violated provisions of the Fair Credit Reporting Act.

Integra's violations include, but are not limited to the following:

(a)   Integra violated 15 U.S.C. §1681b by willfully and/or negligently accessing Cheryl Shockley' consumer credit report and file without a permissible purpose under the Act.

116.   Clarity  willfully and/or negligently  violated provisions of the Fair Credit Reporting Act.

Clarity's violations include, but are not limited to the following:

(a)   Clarity violated 15 U.S.C. §1681a by willfully and/or negligently releasing information from Cheryl Shockley' consumer credit file and her consumer credit report to Integra, where Integra had no permissible purpose under the FCRA to access or receive such information.

117.   As a result of the above violations of the FCRA, Integra is liable to Cheryl Shockley in the sum of Cheryl Shockley' actual damages, statutory punitive damages, costs, disbursements, and reasonable attorney's fees.

118.   As a result of the above violations of the FCRA, Clarity is liable to Cheryl Shockley in the sum of Cheryl Shockley' actual damages, statutory punitive damages, costs, disbursements, and reasonable attorney's fees.

## COUNT 2.    WISCONSIN'S PRIVACY STATUTE

119.    Cheryl Shockley incorporates by reference all the foregoing paragraphs.

120.    The information concerning Cheryl Shockley, as contained in the consumer credit report and file maintained by Clarity, includes non public PII such as Cheryl Shockley' social security number, and further includes non public personal financial information ("PFI") such as her banking information, and her credit score.

121.    The information concerning Cheryl Shockley, as contained in the consumer credit report and file maintained by Clarity, is private, and is of a highly personal nature.

122.    Similar information concerning any reasonable person of ordinary sensibilities, would also be considered private and of a highly personal nature.

123.    The unlawful accessing of that information by Integra is highly offensive to Cheryl Shockley.

124.    The unlawful re disclosure of that information by Integra is highly offensive to Cheryl Shockley.

125.    Any unlawful accessing and re disclosure of similar information of any reasonable person of ordinary sensibilities, would be highly offensive to any such person.

126.    Integra acted unreasonably and recklessly in accessing, as well as subsequently re disclosing, Cheryl Shockley' information including PII and PFI about Cheryl Shockley.

127.    While Cheryl Shockley' PII and PFI were not disclosed to the general public, Cheryl Shockley' PII and PFI were disclosed to an audience that includes companies that Cheryl Shockley has never contracted with, companies that Cheryl Shockley has never authorized to receive such information, and companies that Cheryl Shockley has no control over including potentially companies based and operating outside the United States and Wisconsin, and outside the jurisdiction of United States and Wisconsin courts.

128. Integra willfully and/or recklessly violated Wis. Stat. § 995.50(2)(a & c), including its prohibition on accessing and then re disclosing Cheryl Shockley' PII and PFI.

129. As a result of the above violations of Wis. Stat. § 995.50, Integra is liable to Cheryl Shockley in the sum of Cheryl Shockley' actual damages, costs, disbursements, and reasonable attorney's fees, along with any appropriate injunctive relief.

## COUNT 3.    DECLARATORY AND INJUNCTIVE RELIEF

130. Cheryl Shockley repeats, re alleges, and incorporates by reference all paragraphs above.

131. A bona fide dispute exists between Cheryl Shockley and Integra with regard to Integra's violations of Cheryl Shockley' privacy rights under Wis. Stat. § 995.50.

132. Integra's violations of Cheryl Shockley' privacy rights under State and Federal law are material, as these violations will effect Cheryl Shockley' credit score, her sense of peace and security, and will likely expose Cheryl Shockley to identify theft.

133. The issuance of a declaratory judgement by this court would serve to identify with specificity that Integra has violated Cheryl Shockley' legal rights under Wis. Stat. § 995.50.

134. Cheryl Shockley is entitled to a determination that Integra has violated Wis. Stat. § 995.50.

135. Pursuant to Wis. Stat. § 995.50(1)(a), Cheryl Shockley is entitled to an order permanently enjoining Integra from further re disclosing Cheryl Shockley' PII and PFI, an order directing Integra to destroy the PII and PFI it currently holds, and an order directing Integra to disclose those parties to whom Integra has sold or shared or redisclosed Cheryl Shockley' PII and PFI.

136. Cheryl Shockley is also entitled to any and all corresponding injunctive relief.

## VI.  REQUEST FOR RELIEF

137.   **WHEREFORE**, Cheryl Shockley respectfully requests that Judgment be entered as follows:

**Count 1 - as to Integra:**

(a)     actual damages;

(b)     punitive damages;

(c)     statutory damages of $1,000.00 per violation;

(d)     costs and reasonable attorney's fees; and

(e)     such other and further relief as the court deems just and equitable.

**Count 1 - as to Clarity:**

(a)     actual damages;

(b)     punitive damages;

(c)     statutory damages of $1,000.00 per violation;

(d)     costs and reasonable attorney's fees; and

(e)     such other and further relief as the court deems just and equitable.

**Count 2 - as to Integra:**

(a)     actual damages;

(b)     punitive damages;

(c)     declaratory and injunctive relief:

(d)     costs and reasonable attorney's fees; and

(e)     such other and further relief as the court deems just and equitable.

**Count 3 - as to Integra:**

(a)     declaratory and injunctive relief:

(b)     costs and reasonable attorney's fees; and

(c)     such other and further relief as the court deems just and equitable.

## VII.  DEMAND FOR TRIAL BY JURY

138.   Cheryl Shockley hereby demands that, to the extent provided by the United States and

Wisconsin Constitutions, United States and Wisconsin Statutes, and United States and

Wisconsin Common  Law,  these claims be determined by a jury of her peers.

Dated: June 10, 2021                                  electronically signed by Eric Crandall
                                                    Eric Leighton Crandall, Esq.
                                                    **CRANDALL LAW FIRM, S.C.**
                                                    421 West Second Street
                                                    PO Box 27
                                                    New Richmond, WI 54017
                                                    715-243-9996 (p)
                                                    WisconsinConsumerLaw@frontier.com
                                                    Wis. Atty. Lic. No. 1001833

                                                    **ATTORNEY FOR PLAINTIFF
                                                    CHERYL SHOCKLEY**